LESCHES LAW
LEVI LESCHES — Cal. Bar No. 305173
5757 Wilshire Boulevard, Suite 535
Los Angeles, CA 90036
Phone: (323) 900-0580
Email: levi@lescheslaw.com

ATTORNEYS FOR
Plaintiff Harold Pick

# IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Harold Pick,<br><br>          Plaintiff,<br><br>     v.<br><br>JAMES A. KAY, an individual; MOTOROLA SOLUTIONS, INC., a Delaware Corporation; LUCKY'S TWO-WAY RADIOS, INC., a Nevada limited liability company; and Does 1 through 20, inclusive;<br><br>          Defendants. | **COMPLAINT FOR RACKETEERING (18 U.S.C. §§ 1961–1968)**<br><br>**JURY TRIAL DEMANDED** |

**Plaintiff Harold Pick, demanding a jury trial on all counts, alleges:**

## JURISDICTION & VENUE

1.     **Plaintiff Harold Pick ("PICK")**, at all times relevant herein, was a resident, domiciliary, and citizen of California, with his primary place of

residence in Los Angeles County.

2. **Defendant JAMES A. KAY ("KAY")** is an individual that, on information and belief, is believed to be a resident, domiciliary, and citizen of Clark County, Nevada.

3. **Defendant MOTOROLA SOLUTIONS, INC. ("MOTOROLA")** is a corporation organized under the laws of the state of Delaware.

4. **Defendant LUCKY'S TWO-WAY RADIOS, INC., LLC ("LTWR")** is a limited liability company organized under the laws of the state of Nevada.

5. Federal jurisdiction over this action arises pursuant to section 1331 of title 28 of the *United States Code*, as Plaintiff raises claims under federal statutes and regulations, including 18 U.S.C. §§ 1961–1968.

6. Because "part of the events or omissions giving rise to the claim" occurred in the Central District for the State of California, venue in this Court is appropriate pursuant to subdivision (b)(2) of section 1391 of title 28 of the *United States Code*.

7. Defendants are subject to personal jurisdiction in this district and state because they knowingly engaged in a conspiracy of unlawful activity that was purposefully against an individual that all the Defendants knew to be located within California, and Defendants knew that the effects of their unlawful conduct would be experienced in California.

## GENERAL ALLEGATIONS

8. This suit arises from the horrific 35-year campaign of retaliation perpetrated against Plaintiff Pick for having reported a federal offense to law enforcement, an activity that is protected under Victim Witness and Protection Act of 1982, Pub. L. No. 97-291, 96 Stat. 1248, (§ 4 of Pub. L. No. 97-291), *codified at* 18 U.S.C. §§ 1512, 1513, 1514, and 1515 ("VWPA").

9. In 1992, Harold Pick and his since-deceased father, Gerard Pick,

flew to Gettysburg, Pennsylvania, to file a complaint against James A. Kay, Jr. with the FCC.

10.    In Gettysburg, the Picks met with FCC agents W. Riley Hollingsworth, Terry L. Fishel, and Anne Marie Wypijewski.  These individuals were "law enforcement officers" within the meaning of § 1513: Hollingsworth, for instance, was a Deputy Chief of the FCC Licensing Division.

11.    The Picks informed the FCC that Kay had improperly obtained, through false pretenses, the signatures of FCC frequency licensees on blank forms, and had then fraudulently filled out those forms to indicate that the signatory had transferred FCC frequency licensees to Kay, before submitting such documents to the FCC.  This reported the commission of a federal offense under 18 U.S.C. § 1001.

12.    The Picks also gave the FCC a letter that the Picks had obtained from Roy Jensen, a former employee of Kay.  The letter given to the FCC by the Picks appeared to have been authored by Dorothy Mae Brinkley, Kay's former secretary / assistant.

13.    The letter appeared to be an extortion demand, demanding that Kay pay a large sum of money to Dorothy Mae Brinkley; or that Brinkley would otherwise she would report Kay to the FCC.

14.    Dorothy Mae Brinkley was found murdered in suspicious circumstances, and the circumstances of her death have never been solved. The Picks were informed that the note provided by Jensen was temporally proximate to the time of Brinkley's murder.

15.    Pick accordingly reported to the FCC facts tending to suggest that Kay may have been involved in acts of violence intended to prevent a report to federal authorities—which, accordingly, constituted the report of a potential federal offense under 18 U.S.C. § 1512.

16.    Kay thereafter sued the FCC to obtain the private files of W. Riley Hollingsworth, Terry L. Fishel, and Anne Marie Wypijewski.   (*Kay v. F.C.C.* (D.D.C. 1994)867 F. Supp. 11, 15.)

17.    In 1993, Pick sued Harold Pick, his mother Anne Pick, and his late father Gerard Pick, alleging defamation, interference, fraud, etc.

18.    Prior to the 1993 lawsuit, Kay had never sued Pick or any of Pick's relations.

19.    Since 1993, Kay has been suing the Picks unabated; having filed over 10 lawsuits against them.

20.    In 1999, Kay obtained a default against the Picks in the 1993 action.  Because California procedure, at the time, did not limit depositions, Kay noticed the Pick's depositions over, over, and over again.

21.    After the Picks had sat through over 10 full days of deposition, Harold Pick failed to appear to one deposition.  Kay, based thereon, succeeded in having Pick's answer stricken and default judgments, exceeding $200,000, entered against Harold Pick and Ann Pick.

22.    Anne Pick and Harold Pick were forced to seek bankruptcy protection multiple times, solely due to Kay's lawsuits.

23.    Kay has gone so far as to renew state-court judgments in violation of Harold Pick's bankruptcy discharge.

24.    In the late 1990's, Pick was attending a trade show in Vegas and ran into Kay.  Kay was engaged in conversation with a third person, and Pick interrupted Kay to ask "why are you doing this to me and my family?"  Kay responded:  "You have done this to yourself."  Upon Pick's query as to what Kay was referring to, Kay advised Pick that "you accused me to the FCC," and "I will not stop until the Pick's are homeless on the street."

25.    Kay obtained judgments through the coercive financial duress of

1   suing the indigent Picks over, over, and over again.

2       26.    For instance, after Gerard Pick died, Kay sued to have himself
3   appointed the executor of Gerard Pick's estate. Kay lost. So Kay simply sued
4   again. The second time, he succeeded. Kay succeed in having himself
5   appointed the executor of Gerard Pick's estate, then promptly sued the estate
6   in his personal capacity; and then, in the capacity of executor, allowed a
7   default to be taken against the estate. Ann Pick and Harold Pick thereby lost
8   their father/husband's entire estate.

9       27.    Kay sent the Los Angeles Sheriff's Department to the Pick's home
10  numerous times to enforce his judgments against the Picks' personal effects.
11  The Los Angeles Sheriff's Department unlawfully seized the Picks' personal
12  items, including their clothing, as well as all of the deceased Gerard Pick's
13  papers, such as photos and letters, and sold them all to James Kay for $5 in a
14  Sheriff's sale.

15      28.    In 2012, Ann Pick attempted to file for Chapter 13 protection.
16  Ann Pick's son, Harold Pick, had received an inheritance, and planned to use
17  the inheritance to fund a payment plan that would pay off the secured
18  portions of Kay's judgments. Harold Pick thereby intended to help protect his
19  mother's home, which was the Pick's last remaining possession from their
20  deceased father/husband.

21      29.    Kay opposed the Chapter 13 plan, and heavily litigated against
22  the Picks, contending that the unsecured portion of his judgments rendered
23  Ann Pick ineligible for a Chapter 13 plan. Kay succeeded, and Ann was forced
24  to liquidate through a Chapter 7 discharge. Kay was given relief from stay to
25  sell the Picks' house in a sheriff's sale.

26      30.    Ann Pick fainted and needed to be hospitalized upon learning that
27  her home, the last remaining possession from her deceased husband, had

28

1   been sold in a sheriff's sale.

2      31.   Ann Pick received $175,000 from the sheriff's sale, which was
3   used to buy a humble small residence on Bundy Street.

4      32.   Kay, in 2013, reopened Anne Pick's bankruptcy to learn how it
5   was that the Picks, despite his efforts, were not homeless.  On June 2013,
6   David Eldan of Parker Milliken Clark O'Hara & Samuelian, APC filed a
7   complaint seeking the revocation of Ann Pick's discharge.

8      33.   David Eldan deposed Harold Pick in revocation action, and
9   propounded numerous subpoenas, before dismissing the revocation action.

10     34.   Unbeknownst to Pick, Eldan was not actually taking discovery for
11  the revocation action, but was secretly preparing a fraudulent transfer lawsuit
12  based on the discovery being taken.

13     35.   In 2005, Motorola obtained a $1.2 million judgment against
14  Harold Pick.

15     36.   Motorola never made any attempt to enforce the judgment,
16  beyond filing an abstract of judgment shortly after its entry.  Thereafter, Pick
17  never heard from Motorola again.

18     37.   Unbeknownst to Pick, Motorola and Kay had entered into an
19  unlawful agreement to bring to fruition Kay's promise to render the Picks
20  homeless.  Under the agreement, Kay would finance a lawsuit by Motorola
21  against Harold Pick, to seize and foreclose on the Bundy street residence that
22  Ann Pick has purchased with the remaining homestead from the sale of the
23  Mesa house.

24     38.   Unbeknownst to Pick, Eldan was taking discovery in the
25  revocation action for purposes of preparing the Motorola lawsuit.

26     39.   In violation of subdivision (b) of Rule 4.1 of the *California Rules*
27  *of Professional Conduct*, Eldan did not disclose to Pick that the revocation-

28

1   action discovery was intended for preparing a lawsuit by Motorola.

2   40.   In August 2014, Eldan dismissed the revocation action.   Eldan
3   would later maintain that he was jointly representing Motorola and Kay.

4   41.   Days later, Motorola suddenly sued Ann Pick and Harold Pick in
5   the Los Angeles Superior Court for fraudulent conveyance, seeking to seize a
6   lien on the Bundy house, as well as damages and punitive damages.

7   42.   The theory of Motorola's suit was that Harold Pick, by attempting
8   to fund his mother's Chapter 13 payment plan of paying $12,000+ per month
9   to Kay, had engaged in a fraudulent conveyance in derogation of Motorola's
10   rights under the 2005 judgment.

11   43.   Motorola's PMK testified at trial that Kay was financing and
12   funding its suit.

13   44.   Motorola's counsel further made numerous statements
14   acknowledging that Kay was financing the suit against the Picks.

15   45.   In other words, Kay sued in bankruptcy court to prevent the Picks
16   from paying him $12,000 a month under the Chapter 13 plan; and then
17   financed a lawsuit by Motorola to seek damages against the Picks for having
18   attempted to pay him through the Chapter 13.

19   46.   Kay sued not only the Picks, but also two other parties that had
20   had the temerity of trying to provide financial assistance to the Picks.

21   47.   Kay then sued Ann Pick's defense counsel, in a case that went to
22   trial.   Kay lost, with the jury finding liability but no damages.   Kay
23   immediately appealed.

24   48.   Motorola also sued Kay, and Kay's acquaintances, in the Clark
25   County, Nevada District Court, claiming fraudulent transfer.

26   49.   Motorola lost, with the revocation Clark County District Court
27   finding on September 1, 2017, that Motorola lacked standing to bring the

28

COMPLAINT FOR DAMAGES

1   action.

2       50.    Motorola promptly sued again.  The Clark County District Court
3   granted summary judgment against Motorola on March 21, 2018, finding that
4   Motorola had *no* evidence to support its claims.

5       51.    On July 18, 2019, it was learned that Kay was definitively learned
6   for the first time that Kay was paying Motorola's attorneys' fees for the
7   prosecution of the LASC action against Harold Pick and Ann Pick, as well as
8   Motorola's attorneys' fees for the prosecution of the Nevada lawsuits against
9   Harold Pick.

10      52.    As stated, Motorola's PMK further acknowledged at trial that Kay
11  was financing and funding its LASC suit, and the Nevada suits, against the
12  Picks.

13      53.    Motorola's PMK further testified in a 2018 deposition that
14  Motorola's trial counsel in the LASC action was jointly representing Kay and
15  Motorola in the matter.

16      54.    On August 5, 2019, Harold Pick filed papers in the LASC action
17  placing Motorola on notice that the suits against him were being motivated
18  by Kay's unlawful retaliation against the property of a person that had
19  reported a federal offense to law enforcement, in violation of 18 U.S.C.
20  § 1513.  Motorola refused to dismiss the action.

21      55.    Motorola's PMK sat throughout the presentation of evidence in
22  the LASC trial, and observed Harold Pick crying on the stand, testifying that
23  Kay had taken everything from him, and begging Motorola to not take their
24  home.   Motorola's PMK sat smirking throughout the proceedings, and
25  Motorola refused to dismiss the action.

26      56.    Motorola's PMK sat throughout the presentation of evidence in
27  the LASC trial, and heard considerable sworn testimony to the effect that

28

Kay's vendetta against the Picks was unlawfully motivated, and was intended as retaliation against the Picks for Gerard Pick and Harold Pick having reported a federal offense to law enforcement.  Motorola refused to dismiss the action.

57.    Using lawsuits as modes of retaliation is a recognized violation of the VPWA.  (*United States v. Tison* (11th Cir. 1986) 780 F.2d 1569, 1572 [Congress intended the criminal provisions, accompanied by the civil protective provision, to reach the threat of otherwise lawful conduct if such conduct was obstructive, or in the case of section 1514, harassing . . . A strong indicator of Congress' determination to strengthen existing legal protections for victims and witnesses of federal crimes [is found in the Legislative history, observing that] . . . [t]here must . . . be protection against the rare type of conduct that is the product of the inventive criminal mind and which also thwarts justice"]; *United States v. Lewis* (7th Cir. 2005) 411 F.3d 838, 843 [filing a civil lawsuit to avoid restrictions on criminal discovery, "while at the same time attempting to intimidate a witness," constitutes the kind of harassment that § 1514 was designed to eliminate]; *United States v. Kilbride* (9th Cir. 2009) 584 F.3d 1240, 1262 ["The undisputed factual findings of the district court with regard to the timing of Kilbride's Mauritius lawsuit -- that it was filed mere days prior to Law's testimony when the documents underlying the action were disclosed to the defense in 2005 -- fully support the district court's determination that the action was filed for the illegitimate purpose of preventing Law's testimony"]; *United States v. Palfrey*, 2007 U.S. Dist. LEXIS 18565, *4, 2007 WL 842770; *United States v. Camick* (D.Kan. Feb. 19, 2014) 2014 U.S.Dist.LEXIS 20329, at *4].)

///

///

**RICO ALLEGATIONS**

**By Plaintiff, against all Defendants**

**including Does 1 through 20**

58.    Plaintiff reincorporates all preceding paragraphs as though fully set-forth herein.

59.    **RICO PROVISION:**  18 U.S. Code § 1962(c);(d).

60.    **BASIS OF LIABILITY:** James Kay: "conducting" a racketeering enterprise, § 1962(c); LTWR: "conducting" a racketeering enterprise, § 1962(c); Motorola, conspiracy to engage in racketeering, § 1962(d).

61.    **VICTIMS:**   Anne Pick (sued through an enterprise directed towards threatening harm to tangible property, in retaliation for having reported a federal offense); Harold Pick (sued through an enterprise directed towards causing harm to tangible property, in retaliation for having reported a federal offense); Mercy Abrahams (sued through an enterprise directed towards causing harm to tangible property, in retaliation for having reported a federal offense).

62.    **PATTERN OF RACKETEERING ACTIVITY:**

    **a. Violated Statutes:** Retaliation against an informant of a federal offense to law enforcement, in violation of 18 U.S.C. § 1513.

    **b. Predicate Acts:**

        **i.** Financing Motorola's lawsuit to sue Harold Pick and Anne Pick in August 2014 for purposes of threatening a lien against and/or threatening to foreclose against the physical residence of Harold Pick and Anne Pick, for purposes of carrying through on James Kay's threat to render the Picks' homeless, in retaliation for having reported a federal offense to law enforcement; and Motorola's agreement to aid, abet,

and conspire in such conduct, and to allow Motorola's name to be used, against the best interests of its shareholders, for purposes of engaging in the unconscionable conduct of evicting a 90-year old woman for petty revenge; and Motorola's actual knowledge, through its PMK's presence at the LASC trial, of the unlawful motive behind the lawsuits, and refusing to retract those lawsuits;

    ii. Financing Motorola's lawsuit to sue Mercy Abrahams in December 2014 for purposes of threatening a lien against and/or threatening to foreclose against the physical real property of Mercy Abraham, for retaliating against Abraham for being associated with Harold Pick and/or due to Motorola's belief that Pick had an interest in such physical real property, who had reported a federal offense to law enforcement; as well as Motorola's agreement to aid, abet, and conspire in such conduct.

    iii. Financing Motorola's lawsuit to sue Mercy Abrahams in November 2017 for purposes of threatening a lien against and/or threatening to foreclose against the physical real property of Mercy Abraham, for retaliating against Abraham for being associated with Harold Pick and/or due to Motorola's belief that Pick had an interest in such physical real property, who had reported a federal offense to law enforcement; as well as Motorola's agreement to aid, abet, and conspire in such conduct.

  c. **Constituents of the Enterprise:** James A. Kay orchestrated the enterprise by using Defendant LTWR to pay the law firms of

Mirman, Bubman & Nahmias, LLP; Parker Milliken Clark O'Hara & Samuelian, APC; and Mazur & Brooks LLP; which used Motorola's name, with the agreement of Motorola, for purposes of threatening harm to the physical residence of the Picks, and against the Nevada property formerly owned by Harold Pick.

d. **Structure of the Enterprise:** Mirman, Bubman & Nahmias, LLP; Parker Milliken Clark O'Hara & Samuelian, APC; and Mazur & Brooks LLP: the lawfirms used to threaten harm to the physical property of the informants, at the bidding and instructions of the Don, Kay, through using Motorola's name, with Motorola's consent; Motorola: a conspirator that agreed to lend its name and judgment to Kay, while agreeing to give Kay full control of the litigation being done in its name.

e. **Defendants Controlling the Enterprise:** James Kay: Defendant conducting the Enterprise (the "Don"); LTWR: the Defendant used by Defendant Kay for paying the participators in the Enterprise.

f. **Liable Persons:** James Kay; LTWR.

g. **Enterprise Defendants:** Motorola.

h. **Harm to Business and Property:** Loss of attorneys' fees in defending the various litigation proceedings;

63.   **INTERSTATE COMMERCE:**   Defendant Motorola is a Illinois-based corporation, that agreed to conspire to injure the Plaintiff in California; Defendants Kay and LTWR; as well as enterprise participants Mazur & Brooks, were Nevada citizens that engaged in conspiring to injure the Plaintiff both in Nevada as well as in California.

## **PRAYER FOR RELIEF**

Plaintiff Pick accordingly prays for the following relief against JAMES A. KAY, an individual; MOTOROLA SOLUTIONS, INC., a Delaware

Corporation; LUCKY'S TWO-WAY RADIOS, INC., a Nevada limited liability company; and Does 1 through 20, inclusive;

(1)    For all damages incurred, in such amount as proven at trial, trebled;

(2)    For all attorneys' fees incurred;

(3)    For all costs of suit;

(4)    For prejudgment and postjudgment interest;

(5)    For injunctive relief;

(6)    For such other and further relief as the Court deems just and proper.

Dated: August 16, 2019         **LESCHES LAW**

_/s/ Levi Lesches_

Levi Lesches
Attorneys for Plaintiff Harold Pick

— **JURY DEMAND** —

Plaintiff hereby demands a jury trial with respect to all issues triable by jury.


Dated: August 16, 2019                    **LESCHES LAW**


                                          ___/s/ Levi Lesches_____
                                          Levi Lesches
                                          Attorneys for Plaintiff Harold Pick