BROWN WHITE & OSBORN LLP
KENNETH P. WHITE (Bar No. 173993)
kwhite@brownwhitelaw.com
333 South Hope Street, 40th Floor
Los Angeles, California 90071-1406
Telephone:  213. 613.0500
Facsimile:  213.613.0550

Attorneys for Defendants
MOTOROLA SOLUTIONS, INC.
and PETER E. CARLSON

## UNITED STATES DISTRICT COURT

## CENTRAL  DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAROLD PICK, an individual; JAY FRANCIS, an individual; WIRELESS US, LC, a Nevada limited liability company;<br><br>             Plaintiffs,<br><br>v.<br><br>JAMES A. KAY, an individual; MOTOROLA SOLUTIONS, INC., a Delaware Corporation; LUCKY'S TWO-WAY RADIOS, INC., a Nevada limited liability company; PETER E. CARLSON, an individual; and DOES 1 through 20, inclusive;<br><br>             Defendants. | Case No.: 2:19-cv-07137-DMG-FFM<br><br>Judge:    Hon. Dolly M. Gee<br><br>**DEFENDANTS PETER E. CARLSON AND MOTOROLA SOLUTIONS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**<br><br>[*Concurrently filed herewith: Request For Judicial Notice In Support of Motion To Dismiss*]<br><br>Date:     December 6, 2019<br>Time:     9:30 a.m.<br>Court:    Courtroom 8C |

PLEASE TAKE NOTICE that on December 6, 2019, at 9:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom 8C of the above-entitled Court, located at Courtroom 8C, 350 West 1st Street, Los Angeles, CA 90012, the Honorable Dolly M. Gee presiding, Defendants Peter E. Carlson and Motorola Solutions, Inc.

1

1   (hereinafter "the Motorola Defendants") will and hereby do move the Court pursuant

2   to Federal Rule of Civil Procedure Rule 12(b)(6) for an order to dismiss Plaintiffs'

3   First Amended Complaint on the grounds that Plaintiffs failed to state a claim upon

4   which relief can be granted and Plaintiff's claim is barred by *Noerr-Pennington*

5   immunity.

6       This motion is based on this Notice, the Memorandum of Points and Authorities

7   filed herewith, the concurrently filed Request for Judicial Notice, the records and

8   pleadings on file herein, and on such other evidence as may be presented.  This

9   motion is made following the conference of counsel pursuant to Local Rule 7-4 which

10  took place on October 17, 2019 and November 1, 2019.

11  DATED: November 8, 2019              Respectfully submitted,

12                                       BROWN WHITE & OSBORN LLP

13

14                                   By   _s/Kenneth P. White_____

15                                         KENNETH P. WHITE
                                           Attorneys for Defendants
16                                         PETER E. CARLSON AND
                                           MOTOROLA SOLUTIONS, INC.

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS PETER E. CARLSON AND MOTOROLA SOLUTIONS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6

# **TABLE OF CONTENTS**

Page

I.      INTRODUCTION ................................................................................ 1

II.     SUMMARY OF THE ALLEGATIONS IN THE FIRST AMENDED
        COMPLAINT AND THE JUDICIALLY NOTICEABLEL FACTS ............... 2

        A.      Codefendant Kay Repeatedly Sued Plaintiff Pick For Decades ............ 3

        B.      Motorola's Copyright Infringement Judgments Against Pick ............... 4

        C.      Motorola's Nevada Lawsuits ................................................... 5

        D.      Motorola's Fraudulent Transfer Action Against Pick ......................... 6

        E.      Plaintiffs' Allegations About Kay Funding The Collections
                Actions ................................................................................ 8

        F.      Plaintiffs' RICO Claim ......................................................... 8

III.    LEGAL STANDARD ......................................................................... 9

IV.     ARGUMENT ................................................................................... 9

        A.      PLAINTIFFS' CLAIM IS BARRED BY THE *NOERR-
                PENNINGTON* DOCTRINE ................................................... 9

                1.      The *Noerr-Pennington* Doctrine Precludes Claims Based On
                        Protected Petitioning Activity ..................................... 10

                2.      *Noerr-Pennington* Applies to Plaintiffs' RICO Claim .............. 11

                3.      Plaintiffs; Allegations And Judicially Noticeable Facts Show
                        That The Sham Litigation Exception Does Not Apply ............. 13

        B.      PLAINTIFFS FAIL TO ALLEGE SUFFICIENT FACTS TO
                SUPPORT A RICO CLAIM ................................................... 18

                1.      Plaintiffs Do Not Plausibly Allege An Enterprise With A
                        Common Purpose ..................................................... 18

                2.      Plaintiffs' Own Allegations Establish That They Were Not
                        Injured In Their Business or Property ........................... 22

                3.      Plaintiffs' Conspiracy Claim Fails With Their Substantive
                        Claim ................................................................. 23

V.      CONCLUSION ............................................................................... 24

i

DEFENDANTS PETER E. CARLSON AND MOTOROLA SOLUTIONS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6

# **TABLE OF AUTHORITIES**

Page(s)

## Cases

*Ad Visor, Inc. v. Pacific Tel. and Tel. Co.*,
  640 F.2d 1107 (9th Cir. 1981)...........................................................................10, 12

*Ashcroft v. Iqbal*,
  556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544,
  570 (2007))....................................................................................................................9

*BE & K Construction Co. v. NLRB*,
  536 U.S. 516 (2002) ....................................................................................................11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................9, 19

*Chaset v. Fleer/Skybox Int'l, LP*, ,300 F.3d 1083 (9th Cir. 2002)................................22

*Chung Goh v. Prima Fin. Grp., Inc.*,
  No. CV 17-03630-SVW-PJW, 2017 WL 7887860 (C.D. Cal. July 26, 2017).........21

*City of Columbia v. Omni Outdoor Adver., Inc.*,
  499 U.S. 365 (1991) ....................................................................................................14

*Committee to Protect our Agricultural Water v. Occidental Oil and Gas
  Corporation*
  235 F.Supp.3d 1132 (E.D. Cal. 2017).......................................................................11

*Darba Enterprises, Inc. v. Amica Mut. Ins. Co.*,
  No. 2:12-CV-00043-LRH, 2012 WL 3096709 (D. Nev. July 30, 2012)..................16

*Entrepreneur Media, Inc. v. Dermer*,
  No. SACV181562JVSKESX, 2019 WL 4187466 (C.D. Cal. July 22, 2019).........15

*Hemi Gp., LLC v. City of New York*,
  559 U.S. 1 (2010) (quoting 18 U.S.C. § 1964(c)).....................................................22

*Howard v. America Online, Inc.*,
  208 F.3d 741 (9th Cir. 2000).......................................................................................23

*Hunt v. Zuffa, LLC*,
  361 F. Supp.3d 992 (D. Nev. 2019) ...........................................................................22

*In re Century Aluminum Co. Secs. Litig.*,
  729 F.3d 1104 (9th Cir. 2013).....................................................................................20

*In re Gilead Sciences Securities Litigation*,
  536 F.3d 1049 (9th Cir. 2008)...................................................................................2, 9

*Izenberg v. ETS Servs., LLC*,
  589 F. Supp.2d 1193 (C.D. Cal. 2008) .......................................................................23

ii

# TABLE OF AUTHORITIES

Page(s)

*Kamal v. County of Los Angeles*
(C.D. Cal., May 2, 2019, No. CV 17-1986-RGK (DFM)) 2019 WL
2502433, report and recommendation adopted (C.D. Cal., June 17, 2019,
No. CV1701986RGKDFM) 2019 WL 2501478 ........................................... 11, 22

*Kearney v. Foley & Lardner, LLP*
590 F.3d 638 (9th Cir. 2009) .....................................................................*passim*

*Knappenberger v. City of Phoenix*,
566 F.3d 936 (9th Cir. 2009)...................................................................9, 18

*Lauter v. Anoufrieva*,
642 F. Supp.2d 1060 (C.D. Cal. 2009) ....................................................23

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001)..............................................................2, 9, 10

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*,
432 F.3d 353 (9th Cir. 2005)....................................................................18

*Moussavi v. Zahedy*,
No. 15CV1698-LAB (KSC), 2017 WL 1929830 (S.D. Cal. May 10, 2017) ...........23

*Nunag-Tanedo v. East Baton Rouge Parish School Bd.*,
711 F.3d 1136 (9th Cir. 2013).................................................................10

*Odom v. Microsoft Corp.*,
486 F.3d 541 (9th Cir. 2007).....................................................................18

*Ogden v. Wells Fargo Bank, N.A.*
(C.D. Cal., Feb. 20, 2015, No. CV 14-3579 DMG (SH)) 2015 WL 13413390,
aff'd sub nom. *Ogden v. Wells Fargo Bank, NA* (9th Cir. 2017) 674
Fed.Appx. 650 .........................................................................................22

*Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*,
298 F.3d 768 (9th Cir. 2002).....................................................................23

*Oregon Natural Res. Council v. Mohla*,
944 F.2d 531 (9th Cir.1991).....................................................................14

*Paulsen v. CNF, Inc.*,
559 F.3d 1061 (9th Cir. 2009)...............................................................2, 9

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*,
508 U.S. 49 (1993) ..................................................................................*passim*

*Reed v. E. End Props., Inc.*,
No. EDCV17955DMGKKX, 2018 WL 6131211 (C.D. Cal. Mar. 15,
2018).........................................................................................11, 12, 13

*Shaw v. Nissan North America, Inc.*,

# TABLE OF AUTHORITIES

Page(s)

220 F.Supp.3d 1046 (C.D. Cal. 2016) ...................................................................20

*Shroyer v. New Cingular Wireless Servs., Inc.*,
622 F.3d 1035 (9th Cir. 2010)...................................................................................9

*Sosa v. DIRECTV, Inc.*,
437 F.3d 923 (9th Cir.2006)............................................................................*passim*

*Stitt v. Citibank, N.A.*,
No. 12-CV-03892-YGR, 2015 WL 75237  (N.D. Cal. Jan. 6, 2015), aff'd,
748 F. App'x 99 (9th Cir. 2018) ...........................................................................20

*STMicroelectronics, Inc. v. Avago Techs. U.S., Inc.*,
No. 5:10-CV-05023-JF PSG, 2011 WL 1362163 (N.D. Cal. Apr. 11, 2011) ..........16

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
546 F.3d 991 (9th Cir. 2008)................................................................................13

*Thomas v. Baca*,
308 Fed.Appx. 87 (9th Cir. 2009)........................................................................22

*Williams v. Jones & Jones Mgmt. Grp., Inc.*,
No. CV 14-2179-MMM JEM, 2015 WL 349443 (C.D. Cal. Jan. 23, 2015)............16

**Statutes**

18 U.S.C. § 1512............................................................................................1

18 U.S.C. § 1513............................................................................................8

18 U.S.C. § 1515...........................................................................................13

18 U.S.C. § 1515(c).......................................................................................13

18 U.S.C. § 1962(c).............................................................................8, 18, 23

18 U.S.C. § 1962(d).............................................................................8, 18, 23

Cal. Pen. Code § 641.3(b)................................................................................8

# I.

## **INTRODUCTION**

Plaintiff Harold Pick ("Pick"), who has *twice* been the subject of substantial judgments for willful infringement of Defendant Motorola Solutions, Inc.'s copyrights ("Motorola"), now lashes out at Motorola with a vexatious, harassing, and wholly meritless RICO claim.  The Court should dismiss it.

Plaintiffs Pick, Jay Francis ("Francis"), and Wireless US, LC ("Wireless US") (collectively, "Plaintiffs") have filed a First Amendment Complaint ("FAC") depicting a bitter legal struggle with defendant James Kay ("Kay") spanning three decades and numerous courts and cases.  Plaintiffs assert that Kay has sued Pick relentlessly since 1993 in retaliation for Pick reporting Kay to the FCC in 1992.  But the FAC shows that Defendants Motorola and Peter Carlson, a Senior Counsel for Motorola ("Carlson") (collectively, "the Motorola Defendants") are strangers to this long and contentious history.  The FAC contains no allegations that the Motorola Defendants had anything to do with Pick's complaint to the FCC or the ensuing litigation prior to 2014.  Rather, Plaintiffs concede that Motorola obtained a $1.2 million judgment against Pick in 2005.  Judicially noticeable documents demonstrate that Motorola sued Pick for copyright infringement and won judgments twice, in 1994 and 2005.

In 2014, Motorola brought actions in Nevada and California seeking to collect on its $1.2 million judgment against Pick.  Plaintiffs assert that Kay funded this litigation as part of his litigation campaign against Pick, and asserts that by allowing this the Motorola Defendants joined a campaign to retaliate against a federal witness in violation of the Victim Witness Protection Act of 1982 ("VWPA"), 18 U.S.C. §§ 1512 *et seq.*  Based on this, Plaintiffs bring a RICO claim against all defendants, claiming witness intimidation as the predicate acts.  Plaintiffs' preposterous theory is that Motorola sued Pick not to collect on its *second* substantial copyright infringement judgment against him, but, for some unexplained reason, to join Kay's campaign to

1

punish Pick for a 1992 report to the FCC that had nothing whatsoever to do with Motorola.

The FAC is simply vexatious and frivolous, and the Court should dismiss it for the following reasons.  First, Plaintiffs' RICO claim is barred by the *Noerr-Pennington* doctrine, which immunizes petitioning activity protected by the First Amendment, including collection lawsuits.  Contrary to Plaintiffs' conclusory claims, Motorola's collections actions were not shams, as demonstrated by their successes.  Second, Plaintiffs cannot and do not state a claim for a RICO violation.  Plaintiffs do not plausibly allege an enterprise with a common goal: both the judicially noticeable records and Plaintiffs' own allegations show that the Motorola Defendants were strangers to Kay's alleged campaign of revenge against Pick, and were pursuing collection of undisputed and valid judgments.  Moreover, Plaintiffs have not alleged the concrete financial loss RICO requires.

Plaintiffs cannot amend the FAC to avoid these problems.  Therefore, the Court should dismiss the action with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Criminal Procedure.

## II.

## SUMMARY OF THE ALLEGATIONS IN THE FIRST AMENDED COMPLAINT AND THE JUDICIALLY NOTICEABLE FACTS

In considering a motion to dismiss, this Court accepts well-pleaded plausible factual assertions as true, but does not accept legal conclusions, conclusory statements, or assertions that contradict judicially noticeable records.  *Paulsen v. CNF, Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001); *In re Gilead Sciences Securities Litigation,* 536 F.3d 1049, 1055 (9th Cir. 2008).  The following facts material to this motion are drawn from Plaintiffs' FAC and from the judicially noticeable documents submitted in the concurrently filed Motorola Defendants' Request For Judicial Notice.

BROWN WHITE & OSBORN
ATTORNEYS

## A.   Codefendant Kay Repeatedly Sued Plaintiff Pick For Decades

In 1992, Pick and his late father filed a complaint against Kay with the Federal Communications Commission.  Pick asserted that Kay had obtained FCC frequency licenses by fraud, and accused him of murder of a potential witness to that fraud.  FAC at ¶¶ 41-45, 46-51.  That year, the FCC initiated an investigation that led to it revoking certain frequency licenses Kay held, yielding extensive and lengthy litigation between the FCC and Kay.  FAC at ¶¶ 52-54.

In 1993, Kay sued Pick, Pick's mother Anne Pick, and Pick's late father for defamation.  FAC at ¶ 60.  Plaintiffs assert that Kay was motivated at least in part by Pick's report to the FCC, and claims that because of Pick's complaint to the FCC, Kay proclaimed he would not stop until the Picks were "homeless on the street."  FAC at ¶¶ 60, 71.  Kay filed many other lawsuits against Pick between 1993 and 2008, and that Pick and Anne Pick were forced to seek bankruptcy protection multiple times as a result of Kay's lawsuits.  FAC at ¶¶ 63, 68.)  Plaintiffs claim that Kay has a history of vexatious litigation intended to injure his enemies.  FAC at ¶¶ 72-77.  They assert that Kay sought to be appointed executor of Pick's deceased father's estate, obtained judgments against the Picks, seized the Picks' personal effects and papers through judgment enforcement actions, repeatedly thwarted the Picks' attempts to resolve the debts in bankruptcy by filing adversary actions, and succeeded in foreclosing on Anne Pick's home.  FAC at ¶¶ 83-129.

Notably, Plaintiffs do not allege *any facts whatsoever* suggesting that the Motorola Defendants were involved in any way in any of this conduct between 1992 and 2013.  The FAC does not allege that the Motorola Defendants had anything to do with the complaint to the FCC, the FCC actions against Kay, or the subsequent litigation campaign by Kay until 2014.  FAC at ¶¶ 41-129.  The FAC does not contain any allegation explaining why the Motorola Defendants would care about Pick's report to the FCC in 1992.

### B.   Motorola's Copyright Infringement Judgments Against Pick

Plaintiffs concede, briefly and without detail, that Motorola obtained a $1.2 million judgment against Pick in 2005.  FAC at ¶ 157.  Judicially noticeable documents supply the relevant context, which is crucial to this motion.

In 1993, Motorola – then known as Motorola Inc. – filed a federal complaint in the Central District of California against Pick and his late father for copyright infringement.  *See* Exh. A to Motorola Defendants' Request For Judicial Notice ("RJN"), docket in *Motorola, Inc. v. Harold Pick et al.,* Case No. 93-CV-5958-ABC-SH at 1.  On October 27, 1995, Motorola and Pick entered into a Stipulated Judgment For Damages and Permanent Injunction in favor of Motorola and against Pick in the amount of $150,000.  See Exh. B to RJN.  In that judgment, Pick stipulated that he had "engaged in knowing, intentional, willful, and malicious infringement of Motorola's copyrights, trademarks, and trade secrets" and stipulated to an injunction prohibiting him from infringing on Motorola's intellectual property.  Exh. B to RJN at 2-13.

But Pick did not stop infringing on Motorola's intellectual property.  In 2004, Motorola filed *another* federal trademark and copyright infringement action against Pick and others in the Central District of California.  *See* Exh. C to RJN, docket in *Motorola, Inc. v. Harold Pick et al,* Case No. 04-CV-2655-JFW-E.  On November 17, 2005, the court entered a Judgment and Permanent Injunction in favor of Motorola and against Pick for $1.2 million, finding that Pick willfully infringed Motorola's copyrights and enjoining him from doing so again ("2005 Pick Judgment").  *See* Exh. D to RJN at 1-2.

Motorola obtained an Abstract of Judgment for the 2005 Pick Judgment on February 6, 2006.  Exh. C to RNJ at 36.  In 2014, Motorola sought and obtained a Judgment Debtor Exam of Pick and a writ of execution against Pick based on the 2005 Pick Judgment.  Exh. C to RJN at 39.  On November 16, 2015, Motorola sought and obtained a Renewal of Judgment against Pick in the amount of $1,835,555.06,

comprised of the original $1.2 million 2005 Pick Judgment and accumulated interest. Exh. C to RJN at 41.  On September 30, 2016, Motorola conducted another Debtor Exam of Pick based on the 2005 Pick Judgment.  Exh. C to RJN at 44.

Pick opposed Motorola's renewal of the 2005 Pick Judgment, arguing that Motorola Solutions, Inc. did not have standing to enforce Motorola, Inc.'s judgment. On November 22, 2017, the Ninth Circuit affirmed the district court and rejected Pick's argument, ruling that Motorola had standing to enforce the judgment under applicable Delaware law.  Exh. L to RJN.

### C.   Motorola's Nevada Lawsuits

Motorola filed two lawsuits in Nevada ("Nevada Lawsuits") seeking to collect on the 2005 Pick Judgment.  Plaintiffs assert, in conclusory fashion, that the lawsuits were meritless.  FAC at ¶¶ 130-32.

On December 20, 2014, Motorola filed a complaint in Clark County, Nevada, against Pick and Mercy Abraham, who is not a party to this case.  Exh. E to RJN, docket in *Motorola Solutions, Inc. v. Harold Pick et al.*, A-14-711099-C (Clark County, Nevada).  That complaint alleged that Pick had fraudulently transferred property to Abraham to evade the 2005 Pick Judgment.  Exh. F to RJN at 5-6.  On September 1, 2017, the Nevada court dismissed the complaint without prejudice, finding that Motorola Solutions, Inc. had not shown it had standing to sue based on a judgment won by Motorola, Inc.  Exh. G to RJN at 1-2.  As is noted above, the Ninth Circuit has specifically rejected this argument and found that Motorola Solutions, Inc. is the successor of Motorola, Inc. under Delaware law and entitled to enforce the 2005 Pick Judgment.  Exh. L to RJN.

On June 14, 2017, Motorola filed another complaint against Pick and Abraham in Clark County.  Exh. H to RJN, docket in *Motorola Solutions, Inc. v. Harold Pick*, et al., A-17-757091-B (Clark County, Nevada).  This complaint also asserted that Pick had fraudulently transferred property to Abraham to evade the 2005 Pick Judgment. Exh. I to RJN at 5-7.  Pick again argued that Motorola lacked standing; but the

1  Nevada court rejected that argument and denied Pick's motion to dismiss on
2  November 15, 2017.  Exh. J to RJN.  Later, on March 21, 2018, the Nevada court
3  granted Abraham's motion for summary judgment and entered judgment against
4  Motorola in favor of Abraham.  Exh. H to RJN at 14.  Motorola appealed the final
5  judgment in Abraham's favor on June 4, 2019.  Exh. K to RJN.

6     **D.    Motorola's Fraudulent Transfer Action Against Pick**

7          On August 27, 2014, Motorola filed a complaint against Pick, his mother Anne
8  Pick, Francis, Wireless US, and The Accommodator Group, Inc. in Los Angeles
9  County Superior Court ("Fraudulent Transfer Action").  *See* Exh. M to RJN.  In the
10 Fraudulent Transfer Action, Motorola asserted that the defendants engaged in a
11 fraudulent scheme to hide Pick's assets from Motorola's collections efforts by
12 purchasing real property ("Disputed Property") in the name of Anne Pick and Francis.
13 Exh. M to RJN at 3.  Motorola asserted four causes of action:  (1) to set aside a
14 fraudulent transfer under California Civil Code Section 3439.04(a)(1); (2) to set aside
15 a fraudulent transfer made by an insolvent person under California Civil Code Section
16 3439.04(a)(2)(B); (3) to set aside a fraudulent transfer made by an insolvent under
17 California Civil Code Section 3439.05, and (4) a claim for declaratory relief to reform
18 the deed and create an equitable mortgage in the Disputed Property.  Exh. M to RJN at
19 5-7.

20         Pick, Francis, and Wireless US repeatedly tried and failed to attack the
21 adequacy of the pleadings in the Fraudulent Transfer Action.  The trial court denied
22 Pick's demurrer and motion to strike on November 20, 2015, finding that Motorola
23 had sufficiently stated its causes of action against Pick.  *See* Exh. N to RJN at 4-8.  On
24 June 27, 2018, the court denied Francis' Motion for Judgment on the Pleadings,
25 finding that Motorola had sufficiently stated its causes of action against Francis.  Exh.
26 O to RJN at 2.

27         The Fraudulent Transfer Action proceeded to trial in August 2019.  Judicially
28 noticeable documents show that the parties – which included Pick, Francis, and

DEFENDANTS PETER E. CARLSON AND MOTOROLA SOLUTIONS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6

Wireless US, the Plaintiffs here – stipulated to facts to be read to the jury.  Exh. Q to RJN.  The stipulated facts relevant to this case include:

- Motorola had obtained the 2005 Pick Judgment;
- In 2009 Pick inherited a home in San Francisco and sold it for $571,649.56;
- In November 2, 2009, Pick gave his attorney Charles Shamash the proceeds of the sale of the inherited home to fund a retainer, and Shamash deposited it into his trust account;
- On February 10, 2009, Pick loaned Shamash $240,000;
- On December 10, 2012, Pick instructed Shamash to repay the loan by transferring $240,000 to an escrow account at Peninsula Escrow to buy the Disputed Property;
- Wireless US transferred $100,000 to the Peninsula Escrow account on December 11, 2012 to buy the Disputed Property;
- The funds at Peninsula Escrow were used to purchase the Disputed Property, with Anne Pick and Francis on title.  Exh. Q to RJN at 2-4.

Pick, Anne Pick, Francis, and Wireless US moved for a directed verdict at the close of evidence; the trial court denied each motion, necessarily finding that Motorola had presented sufficient evidence to sustain its claims.  Exh. Q to RJN at 1; Exh. P to RJN at 2.  On August 20, 2019, the jury returned its verdict and awarded Motorola $250,504 in damages against Pick, finding that Pick had intentionally concealed from Motorola the facts concerning the transfers of funds.  Exh. R, S to RJN at 5-6.  The jury also found that Pick transferred property to Francis, Wireless, and Anne Pick in order to hinder, delay, or defraud Motorola, and that the transfers rendered Pick insolvent.  Exh. R, S to RJN.  However, the jury also found that Francis, Wireless, and Anne Pick had received the property from Pick in good faith, and did not award damages against them.  Exhs. R, S to RJN.

On September 9, 2019, Motorola filed a brief asking the Court to rule in its favor on the Fraudulent Transfer Action's equitable Fourth Cause of Action For

7

1    Declaratory Relief, noticing the matter for November 7, 2019.  *See* Exh. T to RJN.

2    That request was still pending when Plaintiffs filed this lawsuit.  *Id.[1]*

3         **E.    Plaintiffs' Allegations About Kay Funding The Collections Actions**

4         The heart of Plaintiffs' RICO claim is their allegation that Kay funded

5    Motorola's Nevada Lawsuits and the Fraudulent Transfer Action through codefendant

6    Lucky's Two-Way Radios, Inc.  FAC at ¶¶ 175-180.  Plaintiffs assert that Defendants

7    "stonewalled" discovery to avoid disclosure of this funding.  FAC at ¶¶ 133-155.

8    Plaintiffs characterize this funding, in conclusory terms, as the Defendants entering an

9    "unlawful agreement to bring to fruition Kay's promise to render the Picks homeless."

10   FAC at 159.  Plaintiffs also allege that they made the Motorola Defendants (including

11   Carlson, who was present at trial) aware *in August 2019* that Kay's motivation was

12   revenge against Pick for his report to the FCC in 1992, but the Motorola Defendants

13   persisted in the Fraudulent Transfer Action to verdict.  FAC at ¶¶ 189-199.

14        **F.    Plaintiffs' RICO Claim**

15        In the wake of the verdict in the Fraudulent Transfer Action, Plaintiffs filed the

16   instant suit leveling a RICO claim against all Defendants under 18 U.S.C. § 1962(c)

17   and (d).  Plaintiffs' theory is that the Defendants formed an enterprise to harm Pick,

18   and committed predicate acts by retaliating against Pick for his 1992 report to the FCC

19   in violation of 18 U.S.C. § 1513.  FAC at ¶ 227(a).  In the alternative, Plaintiffs

20   speculate on information and belief that Kay must have violated California's

21   commercial bribery statute, Cal. Pen. Code § 641.3(b), by bribing Carlson to engage

22   in the collections litigation in Motorola's name.  FAC at ¶¶ 206-208, 227(a).

23   Plaintiffs assert that they suffered damages in the form of legal fees, loss of business

24   relationships from associates who received subpoenas, and increased rent from a

25   landlord who raised Pick's rent after receiving a subpoena.  FAC at ¶ 227(g).

26

27   [1] By the time of the hearing on this Motion the Motorola Defendants will be able to
     submit a judicially noticeable record showing that on November 7, 2019, the court
     continued the hearing on Motorola's motion to January 23, 2020, ordering further

28   briefing.  As of this writing – November 8, 2019 – that record is not yet available.

BROWN WHITE & OSBORN
A T T O R N E Y S

# III.

# LEGAL STANDARD

The Court dismisses a complaint under Federal Rule of Civil Procedure 12(b)(6) when it fails to present a cognizable legal theory or fails to allege sufficient facts to support such a theory.  *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).  To survive a motion to dismiss, a complaint must contain factual matter which, if accepted as true, is enough to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

In evaluating a complaint, the Court accepts only well-pleaded factual allegations as true.  The Court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  *Paulsen,* 559 F.3d at 1071.  Rather, "[c]onclusory allegations of law ... are insufficient to defeat a motion to dismiss."  *Lee,* 250 F.3d at 679.  Moreover, the Court "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit*." In re Gilead Sciences Securities Litigation,* 536 F.3d at 1055.  "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Id.*

The Court may dismiss a claim without leave to amend when the court "determines that the pleading could not possibly be cured by the allegation of other facts."  *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

# IV.

# ARGUMENT

## A.   PLAINTIFFS' CLAIM IS BARRED BY THE *NOERR-PENNINGTON DOCTRINE*

Plaintiffs' entire case is premised on the proposition that the Motorola

Defendants engaged in unlawful racketeering by filing the Nevada Lawsuits and the Fraudulent Transfer Action to collect on the 2005 Pick Judgment because doing so constituted witness retaliation in violation of the VWPA. But those lawsuits represented petitioning the government for redress of grievances, which was the Motorola Defendants' right under the First Amendment. Under the *Noerr-Pennington* doctrine, the Motorola Defendants' actions are immune from suit. The Court must therefore dismiss the case with prejudice.

### 1. The *Noerr-Pennington* Doctrine Precludes Claims Based On Protected Petitioning Activity

The *Noerr-Pennington* doctrine protects the First Amendment right to petition the government for redress of grievances. *Nunag-Tanedo v. East Baton Rouge Parish School Bd.,* 711 F.3d 1136, 1138–1139 (9th Cir. 2013). Under the doctrine, those who petition the government are "generally immune from statutory liability for their petitioning conduct." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir.2006). The right to petition extends to "all departments of the government" and includes petitioning both state and federal courts through litigation. *Id.* at 929-30; *Kearney v. Foley & Lardner, LLP* 590 F.3d 638, 644 (9th Cir. 2009). Specifically, the First Amendment protects the right to bring collections lawsuits as a form of petitioning the government. *Ad Visor, Inc. v. Pacific Tel. and Tel. Co.*, 640 F.2d 1107, 1110 (9th Cir. 1981) ("In sum, Berry's state court collection suits are fully protected under its First Amendment right "to petition the government (the judiciary) for redress of private grievances . . . .").

Though the *Noerr*-Pennington doctrine originally arose in the antitrust context, the Supreme Court has since applied it "with full force in other statutory contexts." *Sosa*, 437 F.3d at 930; *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir.2000) (holding that, because it "is based on and implements the First Amendment right to petition," the Noerr–Pennington doctrine "applies equally in all contexts"). Specifically, the doctrine applies to RICO suits attacking petitioning activity. *Sosa*, 437 F.3d at 932

10

(affirming dismissal of RICO claim based on *Noerr-Pennington* immunity); *Reed v. E. End Props., Inc.*, No. EDCV17955DMGKKX, 2018 WL 6131211, at *13 (C.D. Cal. Mar. 15, 2018) (same).  In fact, federal courts in California have applied the doctrine to RICO claims asserting VWPA violations as a predicate, as Plaintiffs do here.  *See, e.g., Committee to Protect our Agricultural Water v. Occidental Oil and Gas Corporation* 235 F.Supp.3d 1132, 1154 (E.D. Cal. 2017) (applying *Noerr-Pennington* analysis to RICO claim premised in part on VWPA predicate acts); *Kamal v. County of Los Angeles* (C.D. Cal., May 2, 2019, No. CV 17-1986-RGK (DFM)) 2019 WL 2502433, at *10, report and recommendation adopted (C.D. Cal., June 17, 2019, No. CV1701986RGKDFM) 2019 WL 2501478 (same).

## 2.   *Noerr-Pennington* Applies to Plaintiffs' RICO Claim

In 2018, this Court articulated the Ninth Circuit's three-part test to determine if *Noerr-Pennington* immunizes particular conduct from a RICO claim:

> To determine whether this alleged conduct is immunized, the Court must follow the three-part test adopted in *BE & K Construction Co. v. NLRB*, 536 U.S. 516 (2002): "(1) identify whether the lawsuit imposes a burden on petitioning rights, (2) decide whether the alleged activities constitute protected petitioning activity, and (3) analyze whether the statutes at issue may be construed to preclude that burden on the protected petitioning activity." *Kearney v. Foley & Lardner, LLP,* 590 F.3d 638, 644 (9th Cir. 2009) (*citing BE&K*, 536 U.S. at 530–33, 535–37).  *Reed, supra,* 2018 WL 6131211, at *12.

Those three factors, applied here, conclusively demonstrate that *Noerr-Pennington* immunizes the Motorola Defendants' conduct.

First, this RICO claim directly burdens Motorola's petitioning rights.  Plaintiffs do not dispute, nor could they, that Motorola has a substantial judgment against Pick.  FAC at ¶ 157; Exh. D to RJN.  Motorola has a First Amendment right to petition the government by filing collections actions seeking to collect on that judgment.  *Ad*

BROWN WHITE & OSBORN
ATTORNEYS

*Visor, Inc.*, *supra*, 640 F.3d at 1110 (collections suits "fully protected" under First Amendment). A RICO claim aimed at lawsuits "places a burden on [defendant's] ability to bring suit . . . ." *Reed*, 2018 WL 6131211, at *12; *Kearney,* 590 F.3d at 644 (RICO claim based on litigation burdened petitioning rights).

Second, the conduct alleged falls squarely within *Noerr-Pennington*'s grant of immunity for protected petitioning activity. The FAC complains that the Motorola Defendants engaged in racketeering by filing and litigating the Fraudulent Transfer Action and the Nevada Lawsuits. FAC at ¶ 227(d). As this Court found in *Reed*, filing and prosecuting lawsuits is exactly what *Noerr-Pennington* protects:

> Much of the conduct complained of is pure petitioning activity, such as filing lawsuits and other motions for relief, presenting arguments to the court, and testifying in court. *See Freeman*, 410 F.3d at 1184 ("A complaint, an answer, a counterclaim and other assorted documents and pleadings, in which plaintiffs or defendants make representations and present arguments to support their request that the court do or not do something, can be described as petitions ...."). The preparation of documents in support of those pleadings and motions, written correspondence among between parties, and pre-litigation activities related to or in preparation for the suit qualify as conduct incidental to such petition that is immune from suit. *See Kearney*, 590 F.3d at 646 (testing of land completed, and statements concerning test results made, in preparation for trial); *Sosa,* 437 F.3d at 935–38 (pre-litigation settlement demands and negotiations); *Freeman*, 410 F.3d at 1184–85 (discovery misconduct); *Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc.*, 944 F.2d 1525, 1528–29 (9th Cir. 1991) (refusal to settle lawsuit). *Reed,* 2018 WL 6131211 at * 13.

*Noerr-Pennington* protects not just lawsuits, but all "conduct incidental to a lawsuit." *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th

12

BROWN WHITE & OSBORN
ATTORNEYS

Cir. 2008).  Therefore, the entirety of the Motorola Defendants' collections efforts are protected.

Third, neither RICO nor the VWPA can be construed to permit Plaintiffs to sue for non-sham collections lawsuits.  The Ninth Circuit has held that "we must construe federal statutes so as to avoid burdening conduct that implicates the protections afforded by the Petition Clause unless the statute clearly provides otherwise." *Sosa*, 437 F.3d at 931.  *Sosa* held that unless a lawsuit falls into the "sham petition" exception discussed below, and "the burdened conduct could fairly fall within the scope of the Petition Clause and a plausible construction of the applicable statute is available that avoids the burden, we must give the statute the reading that does not impinge on the right of petition." *Id.* at 932 (finding that mail fraud statute does not demonstrate intent to burden non-sham petitions); *Reed*, 2018 WL 6131211 at * 13-14 (same).  Here, RICO and the VWPA should be interpreted in a way that does not burden First Amendment petitioning rights by applying *Noerr-Pennington* to immunize lawsuits unless they fall into the sham exception.

In fact, the VWPA clearly reflects Congressional intent to protect non-sham litigation, not to criminalize it.  In 18 U.S.C. § 1515, providing definitions applicable to the entire VWPA, Congress provided that the law "does not prohibit or punish the providing of lawful, bona fide, legal representation services in connection with or anticipation of an official proceeding."  18 U.S.C. § 1515(c).  That reflects a Congressional intent to immunize, not punish, lawful litigation.  It also provides a "plausible construction" that avoids burdening petitioning activity by criminalizing non-sham collections lawsuits.  *Sosa*, 437 F.3d at 931.

Therefore, *Noerr-Pennington* applies to, and defeats, Plaintiffs' RICO claim against the Motorola Defendants.

### 3.    Plaintiffs' Allegations And Judicially Noticeable Facts Show That The Sham Litigation Exception Does Not Apply

The Ninth Circuit recognizes a narrow "sham litigation" exception to *Noerr-*

13

*Pennington*, which Plaintiffs seek to invoke.  Their effort is meritless.  The sham exception encompasses only "petitioning conduct that, although ostensibly directed toward influencing governmental action, is a mere sham to cover what is nothing more than an attempt to interfere directly with the business relationships of a competitor." *Sosa*, 437 F.3d at 938.  "The 'sham' exception to *Noerr* encompasses situations in which persons use the governmental process—as opposed to the outcome of that process—as an anticompetitive weapon."  *City of Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365, 380 (1991).

The sham exception deprives litigation of *Noerr-Pennington* immunity in only three very limited circumstances: first, "where the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful"; second, "where the conduct involves a series of lawsuits brought pursuant to a policy of starting legal proceedings without regard to the merits and for an unlawful purpose"; and third, when "the allegedly unlawful conduct consists of making intentional misrepresentations to the court, litigation can be deemed a sham if a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy." *Sosa,* 437 F.3d at 938 (internal citations and quotations omitted).  Plaintiffs' own allegations and the judicially noticeable facts show that these exceptions to *Noerr-Pennington* do not apply.

As a preliminary matter, Plaintiffs cannot trigger the sham exception through conclusory allegations.  Rather, any facts supporting the sham allegation must be pled with particularity.  "Conclusory allegations are not sufficient to strip a defendant's activities of Noerr–Pennington protection." *Oregon Natural Res. Council v. Mohla*, 944 F.2d 531, 533 (9th Cir.1991).  In fact, the Ninth Circuit has established a heightened pleading requirement for sham allegations, because allowing plaintiffs to strip defendants of First Amendment rights through mere conclusory allegations would chill protected speech.  *Kearney*, 590 F.3d at 647; *Entrepreneur Media, Inc. v.*

14

DEFENDANTS PETER E. CARLSON AND MOTOROLA SOLUTIONS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6

1   *Dermer*, No. SACV181562JVSKESX, 2019 WL 4187466, at *5 (C.D. Cal. July 22,

2   2019).

3       Plaintiffs do not meet this standard.  First, Plaintiffs identify no alleged

4   misrepresentations the Motorola Defendants made to any court, let alone any

5   misrepresentations that would deprive any proceeding of its legitimacy.  That

6   immediately eliminates the "fraud on the court" theory of the sham exception.  *Sosa*,

7   437 F.3d at 938.

8       Second, Plaintiffs do not plead facts sufficient to show that the Motorola

9   Defendants' collections actions were "objectively baseless."  Plaintiffs dwell, at great

10  length, at their absurd theory that the Motorola Defendants' *motivation* or "mens rea"

11  was wrongful because, for some inexplicable reason, in *2014* they joined a conspiracy

12  to retaliate against Pick for reporting Kay to the FCC in *1992* in a matter that had

13  nothing whatsoever to do with Motorola.  But the sham exception requires both a

14  wrongful subjective motive *and* objective lack of merit.  As the United States

15  Supreme Court explained:

16          First, the lawsuit must be objectively baseless in the sense that no

17          reasonable litigant could realistically expect success on the merits. If an

18          objective litigant could conclude that the suit is reasonably calculated to

19          elicit a favorable outcome, the suit is immunized under Noerr, and an

20          antitrust claim premised on the sham exception must fail.  Only if

21          challenged litigation is objectively meritless may a court examine the

22          litigant's subjective motivation.  *Prof'l Real Estate Inv'rs, Inc. v.*

23          *Columbia Pictures Indus., Inc.,* 508 U.S. 49, 60–61 (1993).

24  Plaintiffs have not pled facts sufficient to show that the Motorola Defendants'

25  collection actions were objectively baseless.  In fact, Plaintiffs allegations and the

26  judicially noticeable documents firmly establish the contrary.  In the Fraudulent

27  Transfer Action, Motorola defeated Pick's demurrer and Francis' motion for judgment

28  on the pleadings.  Exhs. N, O to RJN.  Moreover, after the close of evidence, the trial

BROWN WHITE & OSBORN
ATTORNEYS

1  court rejected motions for directed verdict by Pick, Anne Pick, Francis, and Wireless

2  US, thus demonstrating that Motorola offered sufficient evidence to establish that its

3  claims had merit.  Exhs. P, Q to RJN.  Motorola *prevailed* against Pick, winning a

4  substantial judgment against him and thus establishing that its claims had merit.  Exhs.

5  P, Q to RJN.  Finally, even though the jury did not award damages against Anne Pick,

6  Francis, or Wireless US, it found that Pick had transferred property to them in order to

7  evade Motorola's judgment, thus establishing that Motorola's claims had merit.  Exhs.

8  R, S to RJN.  Courts consider such successes in determining that an action was not

9  "objectively meritless" for *Noerr-Pennington* purposes.  *STMicroelectronics, Inc. v.*

10  *Avago Techs. U.S., Inc*., No. 5:10-CV-05023-JF PSG, 2011 WL 1362163, at *2 (N.D.

11  Cal. Apr. 11, 2011) ("[C]ourts often look to settlements and rulings on dispositive

12  motions as evidence of the merits of the case."); *Williams v. Jones & Jones Mgmt.*

13  *Grp., Inc.*, No. CV 14-2179-MMM JEM, 2015 WL 349443, at *10 (C.D. Cal. Jan. 23,

14  2015) ("given that the state court proceedings resulted in favorable rulings for JJMG

15  and the attorney defendants, their defensive activity cannot be characterized as

16  'objectively baseless'").  As the Supreme Court explained, "a winning lawsuit is by

17  definition a reasonable effort at petitioning for redress and therefore not a sham."

18  *Prof'l Real Estate Inv'rs, Inc.,* 508 U.S. at 61.

19      Plaintiffs also cite Motorola's post-trial motion asking the trial court to rule in

20  its favor on the equitable fourth cause of action, arguing that it is unreasonable.  But

21  Plaintiffs made that claim *before the trial court even considered or ruled on the*

22  *motion*.  Exh. T to RJN.  This demonstrates that the allegation is meritless and in bad

23  faith.  *See, e.g., Darba Enterprises, Inc. v. Amica Mut. Ins. Co.*, No. 2:12-CV-00043-

24  LRH, 2012 WL 3096709, at *3 (D. Nev. July 30, 2012) (party "cannot plausibly

25  allege" that litigation that is ongoing and has not been dismissed is objectively

26  baseless).  Moreover, Plaintiffs' allegations about the motion are conclusory and

27  insufficient to establish objective meritlessness.

28

BROWN WHITE & OSBORN
ATTORNEYS

Plaintiffs also assert that the Nevada Lawsuits were shams because Motorola did not prevail in them.  Not so.  The Supreme Court has cautioned that a court cannot infer that a suit was objectively meritless just because it was not successful.  *Prof'l Real Estate Inv'rs, Inc.*, 508 U.S. at 61.  "To state a claim under the sham exception, however, more is required than a bare allegation of a history of failed appeals." *Oregon Nat. Res. Council*, 944 F.2d at 534.  It is not enough, for instance, to recite that a case was dismissed or rejected at summary judgment.  "Even though ONRC's attempt to enjoin logging of the Resell was defeated on summary judgment, *Noerr–Pennington* protection is appropriate so long as ONRC was genuinely seeking governmental action." *Id.* at 535.  Plaintiffs' allegations about the Nevada Lawsuits are extremely brief and conclusory and offer no facts supporting the conclusion that "no reasonable litigant could realistically expect success on the merits," as is required to establish objective meritlessness.  *Prof'l Real Estate Inv'rs, Inc.*, 508 U.S. at 61; FAC at ¶¶ 130-132.

In fact, the judicially noticeable facts show that the first Nevada lawsuit was only dismissed because the court found that Motorola Solutions, Inc. had not shown it had standing to collect on Motorola, Inc.'s judgment – an argument the Ninth Circuit specifically rejected when Pick raised it.  Exhs. G, L to RJN.  In the second case, the Nevada court *rejected* Pick's motion to dismiss.  Exh. J to RJN.  Though the Nevada court did grant summary judgment against Motorola, it did so in favor of Mercy Abraham – who is not a party to this case – not in favor of Pick.  Exh. H to RJN at 14.  Moreover, Motorola has appealed that summary judgment, and the appeal is still pending.  Exh. K to RJN.  These facts, combined with Plaintiffs' conclusory allegations, show that Plaintiffs cannot establish that the Nevada Lawsuits fell within the sham exception.

Therefore, Plaintiffs have not alleged facts sufficient to trigger the sham exception to *Noerr-Pennington.*  In fact, the facts they allege, combined with the judicially noticeable documents, show conclusively that *Noerr-Pennington* immunity

17

1   squarely applies.  The Court should dismiss the FAC on that basis alone.  Since it is

2   not a defect that can be repaired through amendment, the Court should dismiss

3   without leave to amend.  *Knappenberger*, 566 F.3d at 942.

### B.   PLAINTIFFS FAIL TO ALLEGE SUFFICIENT FACTS TO SUPPORT A RICO CLAIM

6        Even if the FAC could survive *Noerr-Pennington*, it fails to state a claim for

7   RICO.  Plaintiffs' sole claim in the FAC is for conducting, and conspiring to conduct,

8   a racketeering enterprise in violation of 18 U.S.C. § 1962(c) and (d).  To state a RICO

9   claim, a plaintiff must allege plausible facts showing "(1) conduct (2) of an enterprise

10  (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5)

11  causing injury to plaintiff's 'business or property.' "  *Living Designs, Inc. v. E.I.*

12  *Dupont de Nemours & Co.*, 432 F.3d 353, 361 (9th Cir. 2005).  Plaintiffs have failed

13  to do so.

### 1.   Plaintiffs Do Not Plausibly Allege An Enterprise With A Common Purpose

16       To state a claim for RICO, Plaintiffs must plead facts sufficient to show an

17  "enterprise," which means pleading facts sufficient to show (1) a common purpose;

18  (2) an "ongoing organization," either formal or informal; and (3) that "the various

19  associates function as a continuing unit."  *Odom v. Microsoft Corp.*, 486 F.3d 541,

20  552 (9th Cir. 2007).  Plaintiffs' allegation of a "common purpose" is both conclusory

21  and utterly implausible.

22       Plaintiffs assert that in 2014 the Motorola Defendants formed a common

23  purpose with Kay of retaliating against Pick for his 1992 report to the FCC, all in

24  violation of the VWPA.  FAC at ¶ 227(b), (c), (d).  But Plaintiffs offer no explanation,

25  let alone a plausible one, of why the Motorola Defendants would possibly care about

26  Pick reporting Kay to the FCC in 1992, or share a purpose of punishing Pick for that

27  act.  They offer no explanation of why Motorola would want to get involved in a bitter

28

BROWN WHITE & OSBORN
A T T O R N E Y S

1  decades-long dispute between Kay and Pick over an FCC case that had nothing

2  whatsoever to do with them.

3       By contrast, Plaintiffs (and the judicially noticeable documents) provide clear,

4  strong motivations for Motorola to collect from Pick.  Pick *twice* willfully violated

5  Motorola's copyrights, forcing Motorola to sue him twice in 1993 and 2004.  Exhs. B

6  and D to RJN.  He continued to infringe on Motorola's copyright even after a federal

7  court enjoined him from doing so.  *Id.*  Motorola had a $1.2 million judgment against

8  Pick, which it was entitled to collect; by 2015, the judgment with interest had grown

9  to a staggering $1,835,555.06.  Exh. C to RJN at 41; Exh. D to RJN.  As Pick

10  *stipulated* in the Fraudulent Transfer Action, he inherited a house in 2009, sold it for

11  $571,649.56, and gave the money to his lawyer *instead of using it to satisfy*

12  *Motorola's judgment*.  Exh. Q to RJN at 2.  The jury found that Pick transferred a

13  substantial amount of that money in order to hinder, delay, or defraud Motorola.  Exh.

14  R to RJN at 1-5.  All of these are plausible – in fact, *compelling* – reasons for the

15  Motorola Defendants to pursue Pick and the property that he fraudulently transferred.

16  Plaintiffs' conclusory assertion that Motorola required a sinister motivation in

17  common with Kay to try to collect is not merely implausible; it is facially ridiculous.

18       Plaintiffs cannot satisfy their obligation to plead a "common purpose" by

19  insisting, in conclusory fashion, that the Motorola Defendants must have had unlawful

20  motivations when all of the undisputed facts point to lawful motivations.  When facts

21  suggest an "obvious alternative explanation" rather than a nefarious conspiracy, they

22  are insufficiently plausible to state a claim.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

23  567 (2007).  "When faced with two possible explanations, only one of which can be

24  true and only one of which results in liability, plaintiffs cannot offer allegations that

25  are merely consistent with their favored explanation but are also consistent with the

26  alternative explanation.  Something more is needed, such as facts tending to exclude

27  the possibility that the alternative explanation is true, in order to render plaintiffs'

28  allegations plausible." *In re Century Aluminum Co. Secs. Litig.*, 729 F.3d 1104, 1108

19

(9th Cir. 2013).  Similarly, in *Shaw v. Nissan North America, Inc.,* 220 F.Supp.3d 1046 (C.D. Cal. 2016), the court found that facts consistent with "ordinary business activity" were insufficient to establish a "common purpose" for RICO purposes.  *Id.* at 1056; *see also Stitt v. Citibank, N.A.*, No. 12-CV-03892-YGR, 2015 WL 75237, at *5 (N.D. Cal. Jan. 6, 2015), aff'd, 748 F. App'x 99 (9th Cir. 2018) (finding that plaintiffs did not allege facts plausibly establishing a common purpose).

Perhaps recognizing this obvious flaw, Plaintiffs assert that the Motorola Defendants must have had bad intent because they did not attempt to collect on the 2005 Pick Judgment between 2006 and 2014.  FAC at ¶ 158.  Once again, Plaintiffs themselves supply the explanation.  Pick repeatedly declared bankruptcy in the course of his litigation with Kay.  FAC at ¶ 68.  There would be no point in pursuing collections actions against a bankrupt judgment debtor.  But Motorola had every reason to pursue a collections action once it learned that Pick had inherited a substantial sum of money and concealed it through a fraudulent transfer.  Exh. Q to RJN at 2.

Furthermore, Plaintiffs dramatically undermine their own assertion of a common purpose with their own timeline.  Plaintiffs assert, in conclusory fashion, that Kay and the Motorola Defendants entered into an unlawful agreement on an unspecified date to retaliate against Pick.  FAC at ¶ 158.  But in asserting that the Motorola Defendants had "mens rea" to retaliate against Pick, Plaintiffs assert that Pick's lawyer informed the Motorola Defendants of that theory *in an ex parte application filed in August 2019.*  FAC at ¶¶ 189-192.  Plaintiffs conclude "Motorola was, accordingly, on direct notice that it was engaging in a federal offense.  Motorola, with *mens rea* that it was abetting retaliation against an informant to the FCC, continued engaging in its criminal conduct."  FAC at ¶ 192.  Plaintiffs also emphasize that Plaintiffs' opening arguments and trial testimony in August 2019 should have informed the Motorola Defendants that Kay was seeking to retaliate against Pick.  FAC at ¶¶ 193-199.  But Plaintiffs do not explain how, if the Motorola Defendants

20

learned of Kay's retaliatory motive at trial in August 2019, they could have shared a common purpose with him to retaliate against Pick when they filed the Fraudulent Transfer Action in 2014 or when they filed the Nevada Lawsuits in 2014 and 2017. Exhs. F, I, M to RJN.  Plaintiffs do not specifically assert, let alone provide facts plausibly supporting, that the Motorola Defendants knew about Pick's 1992 report to the FCC, or Kay's alleged retaliatory motive, before August 2019.  Perhaps realizing this, Plaintiffs argue that the Motorola Defendants were wrong to continue the case after Plaintiffs announced that theory.  FAC at ¶¶ 192, 199.  But asserting that the Motorola Defendants continued to prosecute a collections action – one in which they substantially prevailed – is not the same as establishing that they formed any common purpose with Kay to retaliate against Pick.

Finally, as an alternative RICO theory, Plaintiffs briefly speculate that Kay bribed Carlson to use Motorola's name to sue Pick, making commercial bribery the predicate act for RICO.  FAC at ¶¶ 206-209.  This supposition is explicitly on information and belief.  *Id*.  Plaintiffs offer no plausible facts supporting this outrageous and explicitly speculative theory.  Once again, they pretend to express surprise that Motorola would want to pursue collections actions at Pick, as if Pick's history of repeatedly infringing Motorola's copyrights, the $1.8 million judgment against him, and his concealment of funds is not enough.  This is woefully insufficient to plead facts plausibly to support a RICO claim.  *Chung Goh v. Prima Fin. Grp., Inc.*, No. CV 17-03630-SVW-PJW, 2017 WL 7887860, at *3 (C.D. Cal. July 26, 2017) (RICO claim not sufficiently pled when based on information and belief claims without plausible factual basis).

In short, Plaintiffs utterly fail to allege facts plausibly establishing the common purpose required by RICO, and in fact affirmatively establish that there was no common purpose through their timeline.

//

### 2.     Plaintiffs' Own Allegations Establish That They Were Not Injured In Their Business or Property

To have standing to bring a RICO claim, a private individual must establish that he or she was "injured in his business or property" because of the defendant's predicate acts. *Hemi Gp., LLC v. City of New York*, 559 U.S. 1, 6 (2010) (quoting 18 U.S.C. § 1964(c)).  Plaintiffs have alleged they were injured by incurring attorney fees, losing business relationships because of unspecified subpoenas sent in the course of the RICO conspiracy, and by Pick's landlord raising his rent after receiving a subpoena during the conspiracy.  FAC at ¶ 227(g).  Those are insufficient as a matter of law to establish injury to business or property for RICO purposes.

"To demonstrate injury for RICO purposes, plaintiffs must show proof of concrete financial loss, and not mere injury to a valuable intangible property interest." *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086–87 (9th Cir. 2002).  Intangibles like harm to reputation or future prospects do not satisfy this requirement. *Hunt v. Zuffa, LLC*, 361 F. Supp.3d 992, 1001 (D. Nev. 2019) ("damage to his reputation" and "lost opportunity" not concrete financial loss for RICO purposes).  That immediately eliminates Plaintiffs' loss of unspecified "business relationships" as potential damages.

Plaintiffs' alleged legal fees don't quality either.  The Ninth Circuit has declined to recognize legal fees as a form of injury to business or property. *Thomas v. Baca*, 308 Fed.Appx. 87, 88 (9th Cir. 2009) ("This court has not recognized the incurrment of legal fees as an injury cognizable under RICO, and we decline to do so here").  Several district courts, including this Court itself, have found that attorney fees do not qualify as concrete financial loss for RICO purposes. *See Ogden v. Wells Fargo Bank, N.A.* (C.D. Cal., Feb. 20, 2015, No. CV 14-3579 DMG (SH)) 2015 WL 13413390, at *2, aff'd sub nom. *Ogden v. Wells Fargo Bank, NA* (9th Cir. 2017) 674 Fed.Appx. 650; *Kamal v. County of Los Angeles* (C.D. Cal., May 2, 2019, No. CV 17-1986-RGK (DFM)) 2019 WL 2502433, at *8, report and recommendation adopted

1   (C.D. Cal., June 17, 2019, No. CV1701986RGKDFM) 2019 WL 2501478*; Lauter v.*

2   *Anoufrieva*, 642 F. Supp.2d 1060, 1086 (C.D. Cal. 2009) (attorneys' fees and legal

3   expenses not compensable in a RICO claim)*; Izenberg v. ETS Servs., LLC*, 589 F.

4   Supp.2d 1193, 1204 (C.D. Cal. 2008) (legal fees do not satisfy the concrete financial

5   injury requirement in a RICO action).

6          Finally, Plaintiffs' vague and conclusory claim that Pick's commercial landlord

7   raised his rent after receiving an unspecified subpoena from an unspecified party in an

8   unspecified case is insufficient to plead concrete financial loss.  A RICO plaintiff must

9   establish not only that the racketeering was the but-for cause of financial loss, but the

10  *proximate* cause of financial loss.  *Oki Semiconductor Co. v. Wells Fargo Bank, Nat.*

11  *Ass'n,* 298 F.3d 768, 773 (9th Cir. 2002).  There is no logical connection between

12  receiving a subpoena and raising commercial rent.  A third party's idiosyncratic

13  reaction to legal process is not proximate cause.  *See, e.g., Moussavi v. Zahedy,* No.

14  15CV1698-LAB (KSC), 2017 WL 1929830, at *3 (S.D. Cal. May 10, 2017) (claim

15  that drug dealing to relative led to that relative's failure to repay loan is too

16  attenuated).

17          **3.     Plaintiffs' Conspiracy Claim Fails With Their Substantive**

18                 **Claim**

19          In the FAC, Plaintiffs purport to bring claims both under 18 U.S.C. § 1962(c)

20  (which prohibits racketeering) and § 1962(d) (which prohibits conspiracies to commit

21  racketeering).  But a RICO conspiracy claim requires a substantive RICO claim to

22  survive – when a plaintiff fails to plead a substantive RICO violation, the RICO

23  conspiracy claim fails with it.  *Howard v. America Online, Inc.*, 208 F.3d 741, 751

24  (9th Cir. 2000).  Therefore, the Court should dismiss the entire RICO claim.

25  //

26  //

27

28

BROWN WHITE & OSBORN
A T T O R N E Y S

1

## V.

## CONCLUSION

For the foregoing reasons, Defendants respectfully requests that the Court dismiss Plaintiffs' First Amended Complaint with prejudice, and without leave to amend.

DATED: November 8, 2019                    Respectfully submitted,

BROWN WHITE & OSBORN LLP


By    _s/Kenneth P. White_
                    KENNETH P. WHITE
                    Attorneys for Defendants
                    MOTOROLA SOLUTIONS, INC.

24